Oscar **DINGESS** et al., Plaintiffs,

v.

Robert E. **HAMPTON** et al., Defendants.

Civ. A. No. 2644-68.

United States District Court
District of Columbia.

Oct. 10, 1969.

Lee A. Albert, New York City, argued for plaintiffs.

Gil Zimmerman, Asst. U. S. Atty., argued for defendants.

Before BAZELON, Chief Judge, Mc-GOWAN, Circuit Judge and BRYANT, District Judge.

OPINION

McGOWAN, Circuit Judge:

The complaint in this case sought injunctive and declaratory relief against the members of the United States Civil Service Commission and the Acting Director of the United States Office of Economic Opportunity. It asked for the convening of a three-judge court under 28 U.S.C. § 2282 because it sought to restrain the enforcement of an Act of Congress for repugnance to the Constitution. The federal statutes so challenged were said to be 5 U.S.C. § 1502(a)(3) and Title 42 U.S.C. § 2943(a). The first is a provision of the familiar Hatch Act which forbids federal employees, or those of State and local governments paid from federal funds, to engage in political activity. The second is a provision of the Economic Opportunity Act of 1964 which extended the Hatch Act to the employees of community action agencies administering, with federal funds, local anti-poverty programs.

Because of the apparent need for a three-judge court, the District Court requested that one be convened, and that was done. The case came on for hearing before it on the plaintiff's [1] motions for a temporary restraining order and a preliminary injunction, and upon the defendants' motion to dismiss. We have, for the reasons hereinafter set forth, concluded that dismissal is in order.

## I

Plaintiff is a resident of Mingo County, West Virginia, and is a full-time staff employee of the Mingo County Economic Opportunities Commission. The Commission is a community action agency which has the responsibility for planning, implementing, and coordinating the anti-poverty programs in Mingo County. Plaintiff alleges that he has been, and plans to continue to be, actively engaged in partisan politics in violation of the Hatch Act, and, accordingly, faces the loss of his job. His monthly salary of $400 represents his sole income, and is paid to him for his services in supervising anti-poverty programs in the Harvey District of Mingo County. He alleges that the Congressional ban on political activity was brought to his notice by his superior, but despite this he engaged in active and organized political activity, and intends to go on doing so. The complaint goes on to assert that plaintiff must either abandon this activity or lose his job; and that, even though his employer should choose not to dismiss him, it would thereby risk loss of the federal funds it receives. Alleging that he is without any remedy at law and that defendants threaten him with irreparable injury, plaintiff seeks by way of relief an injunction against enforcement of the statutory ban on partisan political activities, and a declaratory judgment that the Acts of Congress in question are, in their application to employees of community action programs, invalid under the First, Fifth, and Ninth Amendments to the Constitution.

In support of their motion to dismiss, defendants point out that Congress effected the extension of the Hatch Act to cover persons employed as is plaintiff by the simple device of defining "State or local agency" for Hatch Act purposes to include a community action agency like the one by which plaintiff is employed.[2] It notes that the enforcement of the Hatch Act itself has been vested by Congress exclusively in the Civil Service Commission. That Act provides (5 U.S.C. §§ 1504, 1505) that violations are to be reported to the Civil Service Commission which shall investigate a possible violation and, if it sees fit, set it for hearing at which the employee (or the State or local agency employing him, or both) may appear with counsel. After hearing the Commission shall determine whether a violation has occurred, and, if so, whether it warrants removal from employment. If removal of a State or local employee is found necessary, notice is given to his employer, and failure to comply requires the Commission to certify to the funding federal agency the requirement that it withhold certain amounts from its grants or loans (5 U.S.C. § 1506).

The Hatch Act provides (5 U.S.C. § 1508) for judicial review of any such

1. Plaintiff Oscar Dingess is the only individually named plaintiff in the complaint and in the motions for preliminary relief. He purports to sue for himself "and all other persons similarly situated."

2. Section 2943(a) of the Equal Employment Opporunity Act provides as follows:

(a) For purposes of chapter 15 of Title 5 any overall community action agency which assumes responsibility for planning, developing, and coordinating community-wide antipoverty programs and receives assistance under this chapter shall be deemed to be a State or local agency; and for purposes of clauses (1) and (2) of section 1502(a) of such title any agency receiving assistance under this chapter (other than part C of subchapter I) shall be deemed to be a State or local agency.

determination by the Civil Service Commission, at the instance of any aggrieved party, by petition to a United States District Court, with further review by direct appeal to a United States Court of Appeals and, on certiorari, by the United States Supreme Court. A court may stay the Commission's order pending completion of judicial review.

When this suit was filed in the District Court on October 23, 1968, the Civil Service Commission decided to investigate the allegations by plaintiff in his complaint that he had violated the Hatch Act. In a letter of March 17, 1969, to the Office of Economic Opportunity, the General Counsel of the Civil Service Commission stated that "[W]e have concluded that the evidence received in the course of the investigation does not provide a basis for initiating action against Mr. Dingess under the [Hatch Act]."[3] On the same date the Commission's Deputy General Counsel wrote plaintiff to the same effect, describing the Commission's posision as follows:

> With regard to your statement that you set up a campaign rally for a Republican candidate on October 9, 1968 and otherwise actively campaigned, our

attorneys interviewed the witness you identified to them as having knowledge of your activity in this respect because he had collaborated with you. They also received sworn statements from several other witnesses who had knowledge of the meeting, including candidates who attended and local party leaders who planned and arranged the meeting. None of these witnesses credited you with having set up the rally, performing any work to arrange or promote it, or otherwise actively campaigning.

Your activities in the Fair Elections Committee concerned with voter registration and related work to prevent election irregularities are not prohibited by the Federal statute and therefore provide no basis for Commission action in your case.

Respecting your intention to actively campaign for local candidates this year, we wish to give you the following advice concerning the provisions of the Federal statute. If you continue your full-time employment with the Mingo County Economic Opportunity Commission, Inc., during the time its programs are being financed by grants under the Economic Opportunity Act of 1964,

3. The letter went on to say that the OEO might wish to review the matter in the light of Section 2943(b) of its statute and its Instruction No. 6907–1. Section 2943(b) is as follows:
(b) Programs assisted under this chapter shall not be carried on in a manner involving the use of program funds, the provision of services, or the employment or assignment of personnel in a manner supporting or resulting in the identification of such programs with (1) any partisan or nonpartisan political activity or any other political activity associated with a candidate, or contending faction or group, in an election for public or party office, (2) any activity to provide voters or prospective voters with transportation to the polls or similar assistance in connection with any such election, or (3) any voter registration activity. The Director, after consultation with the Civil Service Commission, shall issue

rules and regulations to provide for the enforcement of this section, which shall include provisions for summary suspension of assistance or other action necessary to permit enforcement on an emergency basis.
Although in his papers and oral argument, plaintiff purported to be apprehensive that he might be discharged by OEO for political activity without reference to the Civil Service Commission, counsel for defendants represented that this would in no event be done. They referred in this regard to the concurrence by OEO and the Civil Service Commission in the Department of Justice view that the Civil Service Commission has exclusive jurisdiction to proceed against individual employees for political activity. Section 2943(b), which is not challenged by plaintiff in his complaint, is construed by defendants as directed at programs, not individuals.

as amended, you will continue to be subject to the political activity restrictions of Federal law (5 United States Code 1501–08).

The General Counsel of the Office of Economic Opportunity has submitted an affidavit in further support of the motion to dismiss which asserts that "OEO plans to take no action in this case, except as the [Civil Service] Commission may direct."

## II

Defendants press upon us a number of reasons why the complaint should be dismissed. They assert that jurisdiction is lacking because (1) there is no true case or controversy, (2) there is no injury to plaintiff in prospect justifying the invocation of equity jurisdiction, and (3) there is no occasion for a court to intervene in advance of the exhaustion of the administrative procedures provided by Congress with full judicial review. They also insist that the constitutional attack upon the extension of the Hatch Act to the poverty program is too insubstantial in the light of Supreme Court precedent, binding upon this court, to warrant reaching the merits, or even to support consideration by a three-judge court.[4]

4. The constitutional considerations advanced by plaintiff against the Hatch Act are essentially the same as those considered and rejected by the Supreme Court for federal employees in United Public Workers of America v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947), and for State and local employees paid from federal funds in Oklahoma v. United States Civil Service Commission, 330 U.S. 127, 67 S.Ct. 544, 91 L.Ed. 794 (1947). Those cases were decided without the participation of all the members of the Court and there were strong dissenting expressions, but they have been left unimpaired by the Court for over 20 years and, absent action by it, their present authority with relation to the issues raised here is clear.

Plaintiff's argument against the applicability of these cases largely is that it is important to have representatives of the poor actively participating in the planning and supervision of local poverty programs, and that there is no legitimate governmental interest in requiring such representatives to forego the exercise of their normal rights to engage in political activity. Congress has, however, moved in three ways to ameliorate this concern. First, it has, in the statute under attack, distinguished between the uncompensated *members* of the planning and directing community action agency, on the one hand, and the agency's permanent paid *employees*, on the other. *See* 5 U.S.C. § 1501(4). The former remain unburdened by Hatch Act restrictions, and no one, be he rich or poor, who serves in these policy-making posts thereby forfeits any of his political rights. Plaintiff is one of the paid staff employees, and presumably is concerned with the execution of policy rather than its formulation. Second, a compromise worked out by Senator Javits limited the reach of the Hatch Act in respect of even the paid employees of the so-called delegate agencies, which are private firms doing work under contract. Senator Javits described that compromise in these words, 112 Cong.Rec. 24733:

On the one hand, people like the Senator from California [Mr. Murphy] and myself are deeply concerned about the dangers of political abuse of the program and, on the other hand, we want the poor to be involved, we want the community leaders involved. It is probably more than one can ask that this kind of involvement could be achieved in total insulation from normal political life.

I am convinced that it would cost us perhaps a good many desirable people if we absolutely and strictly "Hatched" everybody, as the saying goes. So, we have come to a middle ground where the Hatch Act applies as to all employees of the "umbrella" agencies, but does not cover those in the delegate agencies except in connection with their official duties carried out in connection with the antipoverty program.

I think that is a fair compromise. I believe the committee has gone a very long way to answer the legitimate and proper objections to this danger in the program.

Thirdly, the Hatch Act by its terms does not prohibit participation by anyone, paid employee or otherwise, in purely local political matters. 15 [5] U.S.C. § 1503.

In sum, § 2943 of the Act reflects a clear Congressional inability to see any

We do not deal with each of these contentions because we think that at least one of them is decisive. That one turns upon the fact that Congress has committed to the Civil Service Commission the sole authority to enforce the Hatch Act, and has hedged that authority about with a full panoply of procedural protections at the Commission level, culminating in an explicit right to judicial review of any adverse determination which the Commission may make. The situation here is not unlike that involved in DuBois Clubs of America v. Clark, 389 U.S. 309, 88 S.Ct. 450, 19 L.Ed.2d 546 (1967), where the Supreme Court affirmed the action of this court in dismissing the complaint for failure to exhaust administrative remedies. There, as here, it was argued that the mere overhanging threat of an administrative proceeding, or the burden of going through with it once begun, has a chilling effect upon First Amendment freedoms of speech and association which vests a court with jurisdiction to intrude itself before the Congressional plan of proceeding is either invoked or has run its course.

In *Clark,* however, the Supreme Court emphasized the full administrative hearing provided to determine the applicability of the statute in question, and the opportunity afforded by judicial review to raise constitutional claims. It alluded to the values that reside in prior determinations of the coverage of a statute by an expert body—determinations which may make constitutional issues academic —and to the desirability of reviewing such claims with the benefit of a full record. It indicated that courts should be slow "to permit substitution of an injunction proceeding for the civil proceeding which Congress has specifically provided."

Plaintiff purports to distinguish *Clark* on the ground that there at least the Attorney General had moved to initiate the administrative proceeding, while here the Civil Service Commission has, despite plaintiff's allegation that he has violated, and intends to keep on violating, the Hatch Act, failed to proceed against him. But there is no basis for us to believe that the Commission is acting in bad faith and is somehow engaging in a sinister war of nerves with plaintiff by means of deliberate inaction. All we can see from the record is that the Commission has, after investigation, concluded that it has no present basis for proceeding against plaintiff—a decision leaving him in possession of the job which he alleges such a fear of losing.[5]

Plaintiff, it seems to us, has no cause to complain if the Civil Service Commission takes a less restrictive view of the applicability of the Hatch Act to his conduct than he does.[6] And, to the extent

meaningful distinction, for Hatch Act purposes, between employees receiving paychecks directly from the federal government, and employees paid directly by federally funded organizations. Since the Supreme Court's decision in *Oklahoma,* there is no constitutional infirmity in this grouping.

5. Plaintiff's curious insistence that he has violated the Act no matter what the Commission says seems at odds with his allegations of the critical importance to him of his job. His equally emphatic allegations that he proposes to go on violating the Act are also at apparent cross purposes with his argument founded upon the chilling effect of the Hatch Act. What is clear is that plaintiff disagrees

with the policy considerations underlying the Congressional decision to extend the Hatch Act to the operations employees of the poverty program, and that he wants a nullification of that legislative judgment by the most expeditious means.

6. 5 U.S.C. § 1502(a) in its entirety provides:
   (a) A State or local officer or employee may not—
   (1) use his official authority or influence for the purpose of interfering with or affecting the result of an election or a nomination for office;
   (2) directly or indirectly coerce, attempt to coerce, command, or advise a State or local officer or employee to pay, lend, or contribute anything of

174

that he persists in his allegedly firm and fixed purpose to violate the Act in the future, and succeeds in doing something which brings the Commission into action against him, he will have the benefit of a full hearing in which the Commission can decide on an evidentiary record whether or not he has violated the Act, and, if so, whether he should lose his job in consequence. If the decision is adverse, plaintiff is free to challenge it in the courts, on the ground either that (1) the Commission erred in construing the statute to apply to his actions as shown in the record, or that (2) the statute could not, consistently with the Constitution, be so applied.

We do not think the mere fact that a constitutional objection to an Act of Congress is derived from the First Amendment automatically and invariably means that a court must resolve the issue in advance, and without the benefit, of the operation of the specific processes provided by Congress for the enforcement of the statute. The applicability of the variously phrased prohibitions of the Hatch Act to particular conduct is frequently fraught with doubt, and the reason Congress entrusted enforcement of the Act exclusively to the Civil Service Commission was because of its long history of functioning in this area and the corresponding expertise it had acquired in divining and applying the reach of the Congressional purposes *vis-a-vis* prohibited political activity. Enforcement by the Commission only after hearing may mean, in one case, that there is no adverse application of the statute to complain of, and, in the next, that the constitutional issue goes before the court on a fully developed record. It is not irrational for both Congress and court to think that the virtues of this approach in terms of the most efficient employment of judicial resources are to be weighed in the balance as against the claims even of the First Amendment.

It is not enough for the citizen to say in every case that he is entitled to have his First Amendment apprehensions resolved in the first instance by a court, no matter how remote or speculative those concerns may be. As the Supreme Court recently had occasion to say in Golden v. Zwickler, 394 U.S. 103, 109–110, 89 S.Ct. 956, 960, 22 L.Ed.2d 113 (1969), the "constitutional question, *First Amendment or otherwise,* must be presented in the context of a specific live grievance;" and it reversed a three-judge court which professed to think that a plaintiff whose immediate interest had become moot had in addition a "further and far broader right to a general adjudication of unconstitutionality * * * in his own interest as well as that of others who would with like anonymity practice free speech in a political environment * * *."

In *Zwickler* the Court was dealing with the question of whether the prospect of criminal prosecution was too remote to present an "actual controversy" within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201. That statute

value to a party, committee organization, agency, or person for political purposes; or
(3) take an active part in political management or in political campaigns.
Plaintiff in his complaint attacks only the last of these three. It is obvious that there might be substantial issues of construction as to which one or more of these categories embraces particular conduct. Indeed, the fact that plaintiff insists he has violated the Act when the Commission says he has not suggests

that there are serious questions of coverage in the application of this statute which it would be useful for the Commission to resolve in the first instance. Plaintiff's present insistence in his opposition to the motion to dismiss that there are no ambiguities in the statute is not entirely in harmony with his Fifth Amendment argument that the allegedly excessive vagueness of § 1502(a) (3) violates the due process requirement that there be adequate prior notice of what conduct is prohibited and what is not.

is relied on by plaintiff here as the source of the court's jurisdiction to declare the challenged statutes unconstitutional; and we think plaintiff encounters the same difficulty on that score as did Zwickler, and also the employees in United Public Workers v. Mitchell, Note 4 *supra*, who were unable to allege that they were threatened with Commission proceedings for violation of the Hatch Act.[7]

The precise disposition we make here is, however, geared more specifically to the concept of the availability of a judicially reviewable administrative determination of amenability to the Hatch Act as a bar to the exercise of jurisdiction in a case like the one before us. There are undoubtedly overlaps in the jurisdictional principles of case or controversy, the threat of irreparable injury, and ripeness or exhaustion of administrative remedies. The first two may, of course, suffice to restrict access to the courts even in those cases where the legislature has failed to utilize the administrative process for enforcement. Where, as here, the administrative machinery, including broad judicial review, has in fact been provided, it seems to us appropriate to look first to the impact of such provision upon judicial jurisdiction.[8] On the record before us, that look compels the conclusion that the motion to dismiss is well taken in this respect and should be granted.

It is so ordered.

---

7. In his complaint plaintiff alleges that he is suing for himself and "all others similarly situated." In *Mitchell* there were a number of individual federal employee plaintiffs who alleged that they wished to participate in political activity but did not wish to risk losing their jobs by doing so. The Supreme Court held that they presented no case or controversy appropriate for the exercise of jurisdiction. Plaintiff asserts that *Mitchell* is obsolete on this score, but it was cited for this proposition earlier this year in *Zwickler*.

8. At stake in this area is not only the efficient utilization of judicial time and energies, but also the integrity of the administrative process as a valuable adjunct in the implementation of legislative policies. Congress has widely employed the independent administrative agency, subject to judicial review, in the enforcement of its statutes. If judicial by-passes are to be freely and easily provided, and without reference to the most extreme and urgent circumstances, the utility and value of the administrative process will be greatly impaired.