## NATIONAL TREASURY EMPLOYEES UNION, Appellant,

v.

## Jerome KURTZ, Commissioner of Internal Revenue Service, et al., Appellees.

No. 77–1809.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 13, 1978.

Decided May 24, 1979.

John F. Bufe, Washington, D. C., with whom Robert M. Tobias, Washington, D. C., was on the brief, for appellant.

Brian G. Kennedy, Atty., Dept. of Justice, Washington, D. C., a member of the Bar of the District of Columbia Court of Appeals, pro hac vice by special leave of court, with whom Earl J. Silbert, U. S. Atty., Barbara Allen Babcock, Asst. Atty. Gen., and Leonard Schaitman, Atty., Dept. of Justice, Washington, D. C., were on the brief, for appellees.

Before BAZELON and ROBINSON, Circuit Judges, and GASCH *, United States District Judge for the United States District Court for the District of Columbia.

GASCH, District Judge:

## INTRODUCTION

The National Treasury Employees Union (NTEU) appeals from a District Court order dismissing its complaint on a motion for judgment on the pleadings. The complaint challenged the facial constitutionality of certain personnel rules of the Internal Revenue Service, as well as their application by means of an IRS Regional Commissioner's memorandum.[1] The District Court granted defendants' motion for judgment on the

---

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

1. The complaint originally challenged the constitutionality of Rule 229.1-Tax Information To Be Treated as Confidential, and Rule 229.2-

pleadings on the grounds that the complaint did not allege an intent or desire to engage in activity proscribed by the contested rules, that there was no credible threat of enforcement against plaintiff or its membership, and that therefore there was no present case or controversy between the parties.[2] This appeal followed.

The facts of this case are as follows: On June 4, 1976, Vincent Connery, president of NTEU, issued a press release charging the IRS with squandering taxpayers' money by spending more than was needed for space renovations in the Dallas Regional Office.[3] These charges were subsequently printed in *The Federal Times* and were based on information supplied by an IRS employee and member of NTEU.[4] After publication of the *Federal Times* article, defendant W. T. Coppinger, IRS Regional Commissioner, issued a memorandum on July 13, 1976 to employees reminding them to avoid improper disclosure of IRS activities, pursuant to Handbook of Employee Responsibilities and Conduct Rules 229.1, 229.2, and 229.3.[5]

On this appeal NTEU disputes the constitutionality of Rule 229.3. Rule 229.3 provides:

Classified Defense Information, as well as Rule 229.3-Service Operations Not To Be Disclosed (IRM 0735.1 Handbook of Employee Responsibilities and Conduct). App. 3. On this appeal, appellant NTEU no longer contests the constitutionality of Rules 229.1 and 229.2, except to the extent that they are referred to in the July 13, 1976 Coppinger memorandum. Brief for Appellant at 20 n.11.

2. App. 127.

3. App. 13.

4. Brief for Appellant at 4–5.

5. The Coppinger memorandum states:
Recently, the Service has been the "victim" of some unwarranted publicity, some of which was disclosed to the press in an unauthorized manner. Although not limited to this Region, incidents have occurred within the Region that have resulted in considerable confusion, unnecessary costs, and disruption of official business.
The purpose of this memorandum is to remind each employee of the responsibility to avoid improper disclosure of Service activities, operations, and plans. You should be especially careful not to engage in "loose

The contents of the Internal Revenue Manual and other internal management documents designated, "For Official IRS Use Only," are, of course, not to be disclosed without authority. (See Section 1240, Chapter 1200, IR–Manual). Information concerning investigations by the Service must not be disclosed in an unauthorized manner. In addition, there are many other matters concerning the activities, operations and plans of the Service which also must not be disclosed in an unauthorized manner within and outside the Service. As a precaution against improper disclosure of information, employees should not engage in loose talk concerning the business of the Service. They should consult their supervisors or Personnel Officers whenever there is any question as to the propriety of releasing any specific information.

NTEU claims that this section is a blanket restriction on the content of pure speech and thus violative of the First Amendment. Additionally, NTEU argues that the Coppinger memorandum was in direct response to NTEU's critical press release and there-

talk" with relatives, friends, business acquaintances, or others concerning official Service operations such as purchases, contracts, leases, space renovations, security, income tax returns, refunds, etc. Regardless of the place or circumstances, casual conversations can lead to unauthorized disclosure of information that could be avoided. While most employees are aware of the extreme importance of not disclosing confidential tax information, a few fail to realize the importance of not disclosing other matters concerning their daily work.
Each of us has been furnished a copy of IRM 0735.1, Handbook of Employee Responsibilities and Conduct, and has acknowledged an obligation to become familiar with its contents and abide by its instructions. Sections 229.1, 229.2, and 229.3 provide specific restrictions on the disclosure of information. I strongly urge each of you to review the Handbook periodically and carefully abide by the rules of conduct. Many of the rules have a vital impact on our ability to carry out the basic mission of the Internal Revenue Service and maintain its integrity.
App. 16.

fore the application of Rule 229.3 through the memorandum unconstitutionally chills the exercise of First Amendment rights by IRS employees and NTEU members.

## NTEU'S CONSTITUTIONAL CONTENTIONS

After reviewing the factual background of this case, it seems desirable to inquire into the sufficiency on the merits of appellant's claims. The Court does not at this time find it necessary to decide the merits of these questions, but an examination of the legal foundation of appellant's case is important in arriving at a resolution of this appeal. Therefore, each of NTEU's constitutional claims will be examined in turn.

NTEU argues first that Rule 229.3 and the Coppinger memorandum are an unconstitutional prior restraint on speech because IRS employees must determine for themselves whether any information they may wish to divulge is subject to the regulation. Additionally, if employees are uncertain, they are to consult their superiors about the propriety of disclosing information. In *Alderman v. Philadelphia Housing Authority*, 496 F.2d 164 (3d Cir. 1974), the United States Court of Appeals for the Third Circuit held that a memorandum issued by the director of the Housing Authority prohibiting all political discussion with tenants by Housing Authority employees regarding a tenants' union election was an unconstitutional prior restraint. *Id.* at 174. The Court specifically noted the sweeping nature of the prohibition, and NTEU argues that the regulation and memorandum in this case are equally broad interdictions against speech. *Cf. Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *United States Civil Service Commission v. National Association of Letter Carriers*, 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973).

NTEU also advances the argument that Rule 229.3 is an overbroad regulation of constitutionally protected speech, and is therefore unconstitutional on its face. NTEU relies primarily on decisions in which courts have struck down as overbroad various enactments prohibiting employees from "publicly disparag[ing] or comment[ing] unfavorably or disrespectfully on the official action of a superior officer," *Gasparinetti v. Kerr*, 568 F.2d 311 (3d Cir. 1977), or engaging in " 'activity, conversation, deliberation, or discussion which is derogatory to the Department,' " *Muller v. Conlisk*, 429 F.2d 901 (7th Cir. 1970), and "disagreement with, or criticism of the official policies and operating practices of the District of Columbia." *Matthews v. Washington*, 424 F.Supp. 97 (D.D.C.1976). NTEU contends that because Rule 229.3 restricts disclosure of virtually any information concerning IRS operations, it falls within the ambit of those decisions. In a related argument, appellant NTEU maintains that the section is vague and in violation of due process as well.[6]

In addition to arguments that Rule 229.3 and the Coppinger memorandum are unconstitutional on their face, alone or in tandem, NTEU contends that the memorandum was issued in close connection with the published report that the IRS was unnecessarily spending money on space renovation in the Dallas office. NTEU alleges that the issuance of the memorandum on the heels of publication of the NTEU statement discourages employees from any future exercise of their right to free speech. NTEU argues further that the issuance of the memorandum removes any doubt as to the unconstitutionality of Rule 229.3.

## JUSTICIABILITY

■ The case or controversy requirement of Article III of the Constitution is funda-

---

**6.** NTEU focuses particularly on this language from Rule 229.3:

> In addition there are many other matters concerning the activities, operations and plans of the Service which also must not be disclosed in an unauthorized manner within or outside the Service.

It should be noted that the area of unregulable speech available to public employees is narrower than that available to the public at large, and such broad clauses have been upheld in the past. *E.g., Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). *Cf. Gasparinetti v. Kerr,* 568 F.2d 311, 315 (3d Cir. 1977).

mental, and dictates that legal issues be presented in the context of actual cases and not in the abstract. *United Public Workers v. Mitchell,* 330 U.S. 75, 89, 67 S.Ct. 556, 91 L.Ed. 754 (1947). The case or controversy test, as stated by appellants, is:

> Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant issuance of a declaratory judgment. *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941).

Brief for Appellant at 39. Moreover, the Court in *United Public Workers v. Mitchell* has said:

> The power of the courts, and ultimately of this Court to pass upon the constitutionality of acts of Congress arises only when the interests of litigants require the use of this judicial authority for their protection against actual interference. A hypothetical threat is not enough.

330 U.S. at 89–90, 67 S.Ct. at 564. *Accord, Laird v. Tatum,* 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972).

■■■ NTEU argues that when First Amendment freedoms are at issue, the case or controversy test is not to be narrowly applied, especially when a statute or regulation is challenged as unconstitutional on its face. Brief for Appellant at 42; *see Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *Davis v. Ichord,* 143 U.S.App.D.C. 183, 442 F.2d 1207 (1970) (Fahy, J.). In *Davis,* this Court held that a complaint alleging that possession of personal dossiers by a congressional committee deterred plaintiffs from exercising their free speech rights failed to state a justiciable controversy because there was no allegation of existing or threatened adverse action by the committee. 442 F.2d at 1215–16. As the Court observed, whether a statute is challenged on its face or in its application, "in both instances the court must be persuaded that there is a genuine possibility that an individual's conduct will

be affected before entering upon constitutional adjudication." *Id.* Thus, even where allegations of unconstitutionality on the face of a regulation are made, a concrete factual dispute is required to make the case justiciable.

Similarly, in *National Student Association v. Hershey,* 134 U.S.App.D.C. 56, 412 F.2d 1103 (1969) (Bazelon, C. J.), this Court held that a First Amendment challenge to Selective Service regulations requiring upward reclassification of delinquent registrants, and a memorandum endorsing those regulations, did not state a justiciable case or controversy. *Id.,* at 69–70, 412 F.2d at 1116–17. Although the Court acknowledged that "suits alleging injury in the form of a chilling effect may be more readily justiciable" than non-First Amendment suits, it was not persuaded that "every plaintiff who alleges a First Amendment chilling effect and shivers in court has thereby established a case or controversy." *Id.* at 66–67, 412 F.2d at 1113–14. The Court reasoned that, once plaintiffs plausibly alleged vulnerability to the alleged chilling effect, three considerations were relevant: (1) The severity and scope of the alleged chilling effect on First Amendment freedoms; (2) the likelihood of other opportunities to vindicate infringed rights with promptness; and (3) the need for factual referents to properly define and narrow the issues. *Id.* at 68, 412 F.2d at 1115. The Court also observed that an official letter or memorandum, not promulgated through any rulemaking authority, should not lightly be deemed the foundation for a declaratory judgment to counter its "chilling" effect. *Id.* at 67, 412 F.2d at 1114.

■■■ The severity and scope of the alleged chilling effect in this case, as they appear from the record, are minimal. Plaintiff recites only that "[t]he disclosure of information by an IRS employee to NTEU is speech protected by the First Amendment and may not be chilled by means of threats of disciplinary and adverse action." Complaint at ¶ 13, Appendix for Appellant at 6. Nowhere does the complaint state that any employee has been

subjected to adverse action or threats of such action, nor does it allege that the existence of the regulation has prevented employees from exercising protected rights. Other opportunities to vindicate infringed rights promptly may arise in the future, and with a more fully developed factual background permitting adjudication of precisely defined legal issues. Therefore, application of the considerations outlined in *Hershey, supra,* indicate that the complaint filed by NTEU does not present a case or controversy.

The concrete factual predicate for judicial review which has been insisted on by the courts is simply not present in this case. Appellant alleges that Mr. Coppinger's memorandum was issued immediately after the disclosure and publication of information about renovation to the IRS office in Dallas,[7] and was intended to keep employees from violating Rule 229.3. The memorandum, however, directed no specific punishment for violation of the rules, did not mention specific instances in which employees would be disciplined, and did not enlarge the scope of coverage of the rules; the memorandum only reminded employees of the existence and content of the Rules of Conduct.[8] Moreover, the government represented to the Court below and to this Court that it is unaware of any facts that would suggest that any IRS employees or NTEU members made any improper disclosures in connection with the NTEU press release. Brief for Appellee at 9. Thus, the Court is not even presented a case in which it might compare the legitimacy of the press release's disclosures with the terms and potential chilling effect of the Coppinger memorandum.

On the question of the facial validity of Rule 229.3, there is likewise no sufficient factual predicate for the Court to balance the competing interests at issue. Even in cases where regulations arguably similar to Rule 229.3 have been found invalid on their face, the courts in those decisions were able to analyze specific facts before reaching a conclusion. *E. g., Muller v. Conlisk,* 429 F.2d 901 (7th Cir. 1970); *Matthews v. Washington,* 424 F.Supp. 97 (D.D.C.1976).

In short, this case embodies a clash between two important interests contending for preeminence. The Court has not considered the merits of that struggle, for the reason that we have not been presented a case of sufficient immediacy to justify entering upon constitutional adjudication. Without a concrete factual setting evidencing a substantial controversy between the parties, this case simply does not meet the case or controversy requirement of the Constitution and is therefore nonjusticiable. Accordingly, the decision of the District Court is hereby affirmed.

*Affirmed.*

---

**7.** App. 4–5; Brief for Appellant at 33–35.

**8.** *See* note 5 *supra.*