Bruce Comly FRENCH, Plaintiff,

v.

Donald J. DEVINE, Director, Office of
Personnel Management

Herbert E. Ellingwood, Chairman, Merit
Systems Protection Board

Ersa H. Poston, Vice Chair, Merit
Systems Protection Board

Alex Kozinski, Special Counsel, Merit
Systems Protection Board,
Defendants.

Civ. A. No. 82–1914.

United States District Court,
District of Columbia.

Aug. 23, 1982.
On Motion to Amend Sept. 7, 1982.

Bruce Comly French, pro se.

Jason D. Kogan, Asst. U. S. Atty., Washington, D. C., for defendants.

## MEMORANDUM OPINION

BRYANT, District Judge.

Plaintiff Bruce Comly French, the District of Columbia City Council's legislative counsel, seeks a preliminary injunction enjoining defendants from prosecuting French under the Hatch Act, 5 U.S.C. §§ 7324–7327, if French takes an active part in the primary campaign for City Council Chairman now under way in the District. French also seeks a declaratory judgment, pursuant to 28 U.S.C. § 2201, that the provisions of 5 U.S.C. § 7321 *et seq.* do not apply to him, or are unconstitutional as applied to him. Defendants seek to dismiss this case on the grounds that until French in fact takes an active part in a campaign and is found by the Merits Systems Protection Board (MSPB) to have violated the Hatch Act, the court lacks jurisdiction. For the reasons stated below, the court dismisses French's complaint on grounds of non-justiciability. Until French seeks an advisory opinion from the MSPB's Special Counsel, his First Amendment rights are not sufficiently chilled to justify the award of injunctive or declaratory relief.

## FACTS

Since 1979, French has served as Legislative Counsel to the District of Columbia City Council. French was nominated to his post by Council Chairman Arrington L. Dixon, and confirmed by the City Council. As a member of D. C.'s Excepted Service, French has no job tenure or protection, except the right to notice and a statement of reasons for termination fifteen days prior to expiration of his appointment. D.C. Code §§ 1–610.5, 1–610.8(11).

Chairman Dixon, whose current term expires January 2, 1983, is now seeking renomination as Democratic candidate for Chairman. The primary election will take place on September 14. French asserts his continued appointment as Legislative Counsel is dependent upon Dixon's renomination and re-election. French, on his own time, wishes to assist Dixon's renomination by engaging in the following activities:

1. Receiving and distributing funds for partisan purposes;
2. Organizing the sale of tickets for fund raising events;
3. Active management of the campaign;
4. Soliciting support for the candidate;
5. Serving as a poll watcher and advocate;
6. Addressing gatherings in support of the partisan candidate;
7. Publicly endorsing the incumbent chairman and causing such announcements of such endorsement to be made;

8. Assist in interpreting provisions of the District of Columbia's local election and conflict of interest laws which [he] ha[s] written; and

9. Driving voters to the polls.

Affidavit of Bruce Comly French, filed July 21, 1982, ¶ 7.

French has not yet engaged in any of the activities listed above because "[i]t is [his] belief that the activities [he] desire[s] to undertake are proscribed by regulations of the Office of Personnel Management or the Merit Systems Protection Board." *Id.* at ¶ 9. French has not requested the MSPB Special Counsel to issue an advisory opinion as to whether he can legally participate in these activities. *See* 5 U.S.C. § 1206(*l*).

## THE STATUTORY SCHEME

Since 1940, the Hatch Act has read:

(a) An employee in an Executive agency or an individual employed by the government of the District of Columbia may not—

(1) use his official authority or influence for the purpose of interfering with or affecting the result of an election; or

(2) take an active part in political management or in political campaigns.

5 U.S.C. § 7324(a). Four months after passage of the District of Columbia Self-Government and Governmental Reorganization Act, Pub.L.No.93–198, 87 Stat. 774 (December 24, 1973), Congress exempted from the Hatch Act "the Mayor of the District of Columbia, the members of the Council of the District of Columbia, or the Chairman of the Council of the District of Columbia . . . ." 5 U.S.C. § 7324(d)(4). High-level Presidential appointees and employees of D. C. educational, research, and charitable institutions are also exempt from the Hatch Act. 5 U.S.C. §§ 7324(c), 7324(d). The D. C. Self-Government Act prohibits the D. C. Council from repealing, altering, or amending any provision of the Hatch Act. D.C. Code § 1–208(b).

The Special Counsel of the MSPB has exclusive authority to investigate Hatch Act violations and to file complaints for such violations with the MSPB. 5 U.S.C. §§ 1206(e)(1)(A), 1206(g)(1). The Special Counsel may also issue advisory opinions as to whether certain activities are permissible under the Hatch Act. 5 U.S.C. § 1206(*l*). 5 C.F.R. § 1255.6 (1982). An employee charged with a Hatch Act violation by the Office of Special Counsel has the right to challenge the complaint, and also has the right to a hearing before the MSPB. 5 U.S.C. § 1207. Should the Board find that an employee has violated the Hatch Act, the Board may require the employee's removal, or suspension without pay for thirty days. 5 U.S.C. § 7325. If a final MSPB order or decision is adverse to the employee, the employee may seek judicial review in a court of appeals or the Court of Claims. 5 U.S.C. § 7703(b)(1).

## THE PARTIES' CONTENTIONS

French seeks a declaratory judgment that the Hatch Act does not apply to him. He asserts that the Act was intended to apply only to executive branch employees, whether of the federal or the D. C. government, and not to partisan appointees of legislative bodies such as the D. C. Council, whose members have little or no civil service protection.

In the alternative, French asserts that application of the Hatch Act to him would be unconstitutional. French contends that the governmental interest in imposing Hatch Act restrictions upon individuals in partisan, legislative positions is not sufficiently strong to justify the infringement of those individuals' First Amendment rights. French also suggests that application of the Act to him violates his equal protection rights, and violates the principle of separation of powers.

Defendants urge the court not to reach the merits of French's claim. Defendants contend that the elaborate statutory scheme for Hatch Act enforcement shows that Congress did not intend federal courts to become involved in Hatch Act issues until after the employee has exhausted administrative remedies. Specifically, defendants

point out that French may, if he wishes, seek an advisory opinion from the MSPB Special Counsel. Whether or not French chooses to do so, and whether or not the advisory opinion is favorable to French, defendants assert that French must campaign and be found to have violated the Hatch Act before he can seek a remedy in this court. *See Dingess v. Hampton,* 305 F.Supp. 169 (D.D.C.1969) (three judge court).

## ANALYSIS

Federal courts established under Article III of the Constitution do not render advisory opinions. "For adjudication of constitutional issues, 'concrete legal issues, presented in actual cases, not abstractions,' are requisite." *Golden v. Zwickler,* 394 U.S. 103, 108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113 (1969), *quoting United Public Workers v. Mitchell,* 330 U.S. 75, 89, 67 S.Ct. 556, 564, 91 L.Ed. 754 (1946). While a plaintiff need not invariably wait until he has been subjected to the force of a law before he may challenge the statute in court, "the mere existence of a statute ... is not ordinarily enough to sustain a judicial challenge, even by one who reasonably believes that the law applies to him and will be enforced against him according to its terms." *National Student Association v. Hershey,* 412 F.2d 1103, 1110 (D.C.Cir.1969).

Suits alleging injury in the form of a chilling effect upon plaintiff's First Amendment rights are more readily justiciable than comparable suits not so affected with a First Amendment interest. *Id.* at 1113. To determine whether the chilling effect in a particular case is sufficiently strong to render a case justiciable, the court must consider: "(1) the severity and scope of the alleged chilling effect on First Amendment freedoms, (2) the likelihood of other opportunities to vindicate such First Amendment rights as may be infringed with reasonable promptness, and (3) the nature of the issues which a full adjudication on the merits must resolve, and the need for factual referents in order properly to define and narrow the issues." *Id.* at 1115.

French's complaint and affidavit do not state that he has been subjected to adverse action or threats of adverse action. However, while French's complaint and affidavit do not explicitly allege that the Hatch Act has prevented French from exercising his protected rights, *see National Treasury Employees Union v. Kurtz,* 600 F.2d 984, 989 (D.C.Cir.1979), French's citation in his brief of *Jordan v. Merit Systems Protection Board,* C.A. No. 80–0465 (D.D.C. January 6, 1981) suggests that French's desire to campaign is chilled because French fears that campaigning will subject him to removal from his position. In this case, however, the severity of the chill upon French's First Amendment rights is mitigated because French can, within one week, obtain an opinion from the MSPB Special Counsel advising him whether the Hatch Act applies to him and/or the activities he proposes to undertake. *Martin Tractor Co. v. Federal Election Commission,* 627 F.2d 375, 384–385 (D.C.Cir.1980). Even though the statute does not explicitly bind the Special Counsel to his advisory opinions, the likelihood that the Special Counsel would consider himself bound by an advisory opinion favorable to French lessens the chilling effect of the Hatch Act enough to deter the court from deciding this case at this time.

It appears that French came for relief directly to this court because he believed that, given the language of the Hatch Act, the Special Counsel would certainly rule against him, and because he believed that, as in *Jordan,* the agency opinion would simply find a violation of the Hatch Act, and not confront claims of the statute's unconstitutionality. Exhaustion of administrative remedies is unnecessary when the claimant seeks to have a legislative act declared unconstitutional and administrative action will leave standing the constitutional question, *Public Utilities Commission v. United States,* 355 U.S. 534, 78 S.Ct. 446, 2 L.Ed.2d 470 (1958); or if it would be futile to comply with administrative procedures because it is clear that the claim will be rejected. *City Bank Farmers*

*Trust Co. v. Schnader,* 291 U.S. 24, 54 S.Ct. 259, 78 L.Ed. 628 (1934).

The court does not believe that resort to the administrative process is useless in this case. Jordan ran for office as Councilman himself, and was removed by the Council. Jordan appealed his removal by the Council to the MSPB, which affirmed the Council's determination that Jordan had violated the Hatch Act. The fact that Jordan's case came to the MSPB on review does not mean that the Special Counsel will initiate a complaint with the MSPB for French's removal, and that the MSPB will order French's removal. The court is unwilling to adjudicate the issues French raises when it is not sufficiently certain that the Special Counsel and the MSPB will act against French.

Second, while in *Jordan* the MSPB declined to rule on the constitutionality of the statute that it is assigned to administer, *In the Matter of Absalom F. Jordan, Jr.,* Docket No. F–1830 (July 5, 1979) at 4, the Special Counsel and the MSPB are not precluded from ruling upon the *applicability* of the Hatch Act. This power is derived in the case of the Special Counsel, from his authority to render advisory opinions and to recommend legislation, *see* 5 U.S.C. § 1206(m), and in the case of the MSPB, from its power to review rules or regulations interpreting the Hatch Act issued by the Director of the Office of Personnel Management, *see* 5 U.S.C. § 1205(e), and its power to recommend legislation, *see* 5 U.S.C. § 1205(k). *See Doe v. Martin,* 404 F.Supp. 753, 763 (D.D.C.1975) (three judge court) (D. C. Board of Elections has power to issue declarations of D. C. Election Act's inapplicability derived from Board's broad rule-making function and authority to issue advisory opinions).

In addition to ascertaining the extent of the chill French asserts, requiring French to seek an advisory opinion before he comes to court will provide a somewhat better record upon which the court can base its decision. The facts the Special Counsel considers will be the same hypotheticals French now poses to the court. But the Special Counsel's

opinion may narrow issues by deciding that only some of the many activities French wishes to undertake would violate the statute. *Compare Signorelli v. Evans,* 637 F.2d 853, 857 (2d Cir. 1980) ("Appellant ... has indicated his proposed course of activity with specificity in his complaint, leaving no room for judicial speculation concerning the intended private action and the likely official response.").

Moreover, "Congress has entrusted enforcement of the [Hatch] Act exclusively to the [MSPB] ... because of its long history of functioning in this area and the corresponding expertise it had acquired in divining and applying the reach of the Congressional purposes *vis-a-vis* the prohibited political activity." *Dingess,* 305 F.Supp. at 174. The legislative history of the Hatch Act's application to various categories of District of Columbia employees is long and complex. An advisory opinion from the Special Counsel would enhance the court's record by elucidating policies underlying the Hatch Act's coverage of certain D. C. employees.

### CONCLUSION

Though the statutory scheme does not mandate that French seek an advisory opinion from the MSPB Special Counsel before coming to court, this case is not justiciable in its present posture. French's complaint is dismissed.

### ON MOTION TO AMEND

AUBREY E. ROBINSON, Jr., District Judge.

Upon consideration of Plaintiff's Motion to Amend the Court's Order dismissing the above-captioned case, the opposition thereto, the hearing held September 3, 1982, and the entire record herein, the Court notes the following:

(1) On August 23, 1982 the Court entered an Order dismissing this action for lack of justiciability. The Court emphasized that Plaintiff had not yet engaged in any of the political activity he contemplates. Moreover, Plaintiff had failed to request an ad-

visory opinion from the Office of Special Counsel of the Merit Systems Protection Board as to whether the activities he wishes to pursue are proscribed by the Hatch Act and would provoke enforcement action by the Special Counsel.

(2) Following dismissal of his action, Plaintiff petitioned the Office of Special Counsel (OSP) for an advisory opinion. The Special Counsel's opinion, issued one week later, concluded that Plaintiff is subject to the Hatch Act and each of the seven categories of political activity he wishes to engage in is prohibited by the Act. The OSP declined to speculate whether it would initiate proceedings against Plaintiff; the opinion noted that initiation of prosecutions is within the discretion of the Special Counsel and depends upon whether the violations are brought to its attention, the circumstances of the alleged violations, and "budgetary and available" resources. Nevertheless, the OSP cautioned that "any employee who violates the Hatch Act necessarily risks prosecution by the Special Counsel." On the basis of that opinion, Plaintiff now seeks to have the Order of dismissal vacated and the case decided on the merits.

■ (3) Plaintiff is entitled to a declaratory judgment on the constitutionality of the Hatch Act as it is applied to him; the current posture of the case presents a justiciable controversy. *See National Student Association, Inc. v. Hershey,* 412 F.2d 1103, 1110–1115 (D.C.Cir.1969). Although there is no certainty of prosecution, the penalty for violating the Act is severe enough to have a substantial "chilling effect" on Plaintiff's first amendment activities. Moreover, the type of activities Plaintiff wishes to pursue are sufficiently defined to permit adjudication of the constitutional issues. As the dates of the primary and general elections draw nearer, the opportunities for Plaintiff to vindicate his first amendment rights are dwindling.

(4) Intervenor David M. Watson wishes to engage in political activity that differs from the activity proposed by Plaintiff. Because Watson has not sought or received an advisory opinion from the OSP on the legality of his proposed activities, the Court declines to amend its Order dismissing the action as to him. Intervenor Harriet B. Burg has not indicated the type of political activity she wishes to engage in or whether she has sought an OSP advisory opinion. The Order dismissing the action as to her is therefore affirmed.

(5) Plaintiff is unquestionably subject to the Hatch Act. The Act provides that "... an individual employed by the government of the District of Columbia may not take an active part in political management or in political campaigns." 5 U.S.C. § 7324(a)(2). Plaintiff concedes that he is employed by the District of Columbia and that he does not fall within any of the exceptions contained in §§ 7324(c) and (d). The particularity with which these exceptions are drawn belie any Congressional intention that individuals in positions such as Plaintiff's also be shielded from the strictures of the Act.

(6) The United States Supreme Court has consistently upheld the validity of the Hatch Act against constitutional challenge. *United Public Workers of America v. Mitchell,* 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947); *United States Civil Service Commission v. National Association of Letter Carriers,* 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973). See also *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) (state "Hatch Act"). The nature of the duties performed by the regulated public employee is irrelevant to the Court's constitutional inquiry. See *Mitchell,* 330 U.S. at 101–102, 67 S.Ct. at 570–571. Thus, the fact that Plaintiff has no hand in the administration or enforcement of the law does not mandate departure from the holdings of *Mitchell* and *Letter Carriers, supra.*

■ (7) The government's interest in limiting "the political influence of federal employees on others and on the electoral process," *Letter Carriers,* 413 U.S. at 557, 93 S.Ct. at 2886, is sufficient to support the Act's broad restrictions on political activity by federal employees. In *Mitchell, supra,* the Court noted that

Congress recognizes danger to the service in that political rather than official effort may earn advancement and to the public in that governmental favor may be channeled through political connections. *Mitchell* 330 U.S. at 98, 67 S.Ct. at 568–69 (footnote omitted).

The Court continued,

Congress may reasonably desire to limit party activity of federal employees so as to avoid a tendency toward a one-party system. It may have considered that parties would be more truly devoted to the public welfare if public servants were not overactive politically. *Id.,* at 100, 67 S.Ct. at 569.

Contrary to Plaintiff's assertions, these reasons for enacting the Hatch Act are applicable to employees in positions such as his, and are sufficient to support application of the Act to him.

(8) In *Letter Carriers,* the Court "unhesitatingly" affirmed *Mitchell* and concluded that an Act of Congress unquestionably would be valid if

in plain and understandable language, the statute forbade activities such as organizing a political party or club; actively participating in fund-raising activities for a partisan candidate or political party; becoming a partisan candidate for, or campaigning for, an elective public office; actively managing the campaign of a partisan candidate for public office; initiating or circulating a partisan nominating petition or soliciting votes for a partisan candidate for public office; or serving as a delegate, alternate or proxy to a political party convention.

*Letter Carriers,* 413 U.S. at 556, 93 S.Ct. at 2886. The seven categories of activity Plaintiff wishes to pursue are all embraced by this list of conduct that constitutionally may be denied to federal employees.

(9) Congress has considerable "leeway in determining which of its employment positions require restrictions on partisan political activities and which may be left unregulated." *Broadrick v. Oklahoma,* 413 U.S. 601, 607 n.5, 93 S.Ct. 2908, 2913 n.5, 37 L.Ed.2d 830 (1973). Whatever differences may exist between various types of employees in the government "are differences in detail so far as the constitutional power under review is concerned. Whether there are such differences and what weight to attach to them, are all matters of detail for Congress." *Mitchell,* 330 U.S. at 102, 67 S.Ct. at 570. The statutory scheme Plaintiff challenges, including the exemptions created for certain employees of the District of Columbia, falls within the permissible range of Congressional "leeway" to identify those employees subject to the strictures of the Act.

THEREFORE, for the reasons set forth above, it is by the Court this 7th day of September, 1982

ORDERED, that Plaintiff's Motion to Amend the Judgment be and hereby is GRANTED; and it is

FURTHER ORDERED, that Plaintiff's constitutional challenges to the Hatch Act, and its application to him, are without merit, and the action be and hereby is DISMISSED.