**UNITED STATES DEFENSE COMMITTEE and Patrick Reilly, Appellants,**

v.

**FEDERAL ELECTION COMMISSION and William F. Smith, in his official capacity as Attorney General of the United States, Appellees.**

**No. 138, Docket 88–6127.**

United States Court of Appeals, Second Circuit.

Argued Sept. 26, 1988.

Decided Nov. 7, 1988.

Frank M. Northam, Washington, D.C. (Webster, Chamberlain & Bean, of counsel), for appellants.

Jonathan A. Bernstein, Washington, D.C. (Lawrence M. Noble, Gen. Counsel, Richard B. Bader, Associate Gen. Counsel, Washington, D.C., of counsel), for appellee Federal Election Com'n.

Before OAKES and ALTIMARI, Circuit Judges.[*]

OAKES, Circuit Judge:

This case presents the question whether an advisory opinion rendered by an administrative agency is reviewable. The advisory opinions in this case were sought by the United States Defense Committee ("USDC") and Patrick Reilly. USDC is a non-profit corporation exempt from federal income tax under 26 U.S.C. § 501(c)(4) (1982) which lobbies on national defense and foreign policy issues. Its membership includes individuals, partnerships and corporations, including business corporations, which contribute to USDC's treasury. Patrick Reilly is a member of the USDC Board of Directors who resides in the Northern District of New York. The agency involved is the Federal Election Commission ("FEC"), which administers and enforces the Federal Election Campaign Act of 1971, as amended, codified at 2 U.S.C. §§ 431–455 (1982) ("FECA" or the "Act"). The FEC also administers the Presidential Election Campaign Fund Act, 26 U.S.C. §§ 9001–9013 (1982 & Supp. IV 1986) ("Fund Act"), and the Presidential Primary

---

[*] The third member of the panel, Hon. Rober J. Miner, recused himself after argument.

Matching Payment Account Act, 26 U.S.C. §§ 9031–9042 (1982) ("Matching Payment Act").

The advisory opinions that were sought by USDC and Reilly relate to two draft letters which discuss candidates' views on defense issues. USDC proposed to issue these letters using funds from its corporate treasury, including funds furnished by business corporations which are prohibited from engaging in certain election activities by section 441b of FECA. The United States District Court for the Northern District of New York, Con. G. Cholakis, Judge, held that it had jurisdiction to entertain the case, contrary to the FEC's assertion. But the district court did hold for the FEC on the merits, declaring that USDC's proposed communications were prohibited by FECA section 441b, and that USDC did not qualify for the exemption from section 441b established in *FEC v. Massachusetts Citizens for Life, Inc.*, 479 U.S. 238, 107 S.Ct. 616, 93 L.Ed.2d 539 (1986). Because we do not think that the complaint presented claims ripe for court adjudication, the judgment of the district court is vacated and the case is remanded with instructions to dismiss the complaint.

## PROCEDURAL HISTORY

The two draft letters prepared by USDC, which discuss some imaginary candidates' answers to a questionnaire about future defense issues, are set forth in the margin.[1]

---

1.
UNITED STATES
DEFENSE COMMITTEE

Lieutenant General
Daniel O. Graham
United States Army, Retired

(Month) (Date), (Year)

Dear Friend:

I'm sure you remember the special letter I recently sent you asking you to contact the congressional candidates from your area to ask them to answer our United States Defense Committee's 1984 Candidate Questionnaire.

I'm pleased to report that the survey has been a great success.

Thanks to your efforts and the efforts of thousands of other defense-minded individuals across America, we've had a tremendous response from the candidates.

Almost XX% of the respondents answered every question—and every question *right*.

Many others answered all but one or two questions.

And I know from the candidates' comments that had it not been for you and other individuals like yourself holding the politicians [sic] feet to the fire many of them would not have answered.

You deserve the credit. And I thank you.

But despite the great response, nationwide, there are still a number of candidates who have not responded.

That's why I'm enclosing a copy of our preliminary results compiled last Friday and asking you to contact the candidates one more time. Please:

... ask those candidates who have not responded yet to do so at once;

... contact those candidates who have answered one or more questions wrong and ask them to reconsider their position and come out for a strong national defense; and

... thank those candidates who came out solidly for a strong National Defense and urge them not to give into [sic] the disarmament lobby.

Your efforts *can* and *will* make a difference.

Let's face it, politicians are a lot more likely to pay attention to the folks back home when they need your help than after they are safely in office.

Thanks again for all you've done.

Sincerely,

Henry L. Walther
Executive Vice President

P.S. For the defense of America it's vital we pin the politicians down on the issues now. And then insist they stick to their promises after they are in office. Please act now.

1) Do you support full funding of the MX missile?

Note 1—Continued

2) Do you support a restoration of the Monroe Doctrine, as incorporated in the Symms Amendment?
3) Do you oppose ratification of the Law of the Sea Treaty?
4) Do you support funding and development of the B–1B manned Strategic Bomber?
5) Do you oppose de facto ratification of the SALT II Treaty without a $2/3$ majority vote in the Senate?
6) Do you support a new strategic doctrine of Assured Survival (as incorporated in the High Frontier Global Ballistic Missile Defense strategy) involving a shift from the doctrine of Mutual Assured Destruction?
7) Do you oppose termination of the Taiwan Relations Act of 1979?
8) Do you support actions tightening restrictions on trade with the Soviets?
9) Do you oppose so-called nuclear "Freeze" proposals like those introduced during the 98th Congress by Senator Edward Kennedy and Congressman Clement Zablocki?
10) Do you support continued U.S. aid to the pro-American government of El Salvador?
11) Do you support the development and production of the Neutron Bomb?
12) Do you support legislation to allow direct assistance to the Afghan freedom fighters, as well as increased aid to Pakistan?

| | (STATE) | | | | | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| District | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 1 *Hon. XXXXXX XXXXXXXX–D | – | – | – | – | – | – | – | – | – | – | – | – |
| District | | | | | | | | | | | | |
| 2 *Hon. XXXXXXX XXXX–D | Y | – | N | – | Y | – | Y | Y | Y | – | Y | Y |
| XXXXXXXX XXXXX–R | – | – | – | – | – | – | – | – | – | – | – | – |
| District | | | | | | | | | | | | |
| 3 *Hon. XXXX XXXXXX–D | – | – | – | – | – | – | – | – | – | – | – | – |
| *Hon. XXX XXXXXXXXX–R | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y |
| District | | | | | | | | | | | | |
| 4 XXXXXX XXX–D | – | – | – | – | – | – | – | – | – | – | – | – |
| *Hon. XXXXXXX XXXXX–R | – | – | – | – | – | – | – | – | – | – | – | – |
| District | | | | | | | | | | | | |
| 5 XXXXXX XXXXXXXXXXX–D | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y |
| XXXXXX XXXXXXX–R | – | – | – | – | – | – | – | – | – | – | – | – |
| District | | | | | | | | | | | | |
| 6 XXXXXXX XXXXXXXXX–D | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | – | Y |
| *Hon. XXXX XXXXXXXXX–R | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y |
| District | | | | | | | | | | | | |
| 7 *Hon. XX XXXXXXXXXX–D | – | – | – | – | – | – | – | – | – | – | – | – |
| XXXXXX XXXXXX–R | – | – | – | – | – | – | – | – | – | – | – | – |
| District | | | | | | | | | | | | |
| 8 *Hon. XXX XXXXXXXXXXX–R | Y | N | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y |
| District | | | | | | | | | | | | |
| 9 *Hon. XXXXXX XXXXXXX–D | – | – | – | – | – | – | – | – | – | – | – | – |
| XXXXXXXXX XXXXXXX–R | – | – | – | – | – | – | – | – | – | – | – | – |
| District | | | | | | | | | | | | |
| 10 XXXXXXX XXXXXX–D | – | – | – | – | – | – | – | – | – | – | – | – |
| *Hon. XXX XXXXXX–R | – | Y | N | Y | Y | Y | Y | Y | N | Y | Y | Y |
| District | | | | | | | | | | | | |
| 11 *Hon. XXXXX XXXXXXXXX–D | – | – | – | – | – | – | – | – | – | – | – | – |
| XXXXX XXXXXXXXX–R | – | Y | Y | – | Y | – | Y | Y | – | Y | – | – |
| District | | | | | | | | | | | | |
| 12 *Hon. XXXXXX XXXXX–D | Y | Y | N | Y | Y | Y | Y | Y | Y | Y | Y | Y |
| District | | | | | | | | | | | | |
| 13 XXXXXX XXXX–D | – | – | – | – | – | – | – | – | – | – | – | – |
| *Hon. XXXX XXXXXXXXX–R | – | Y | – | Y | Y | – | Y | Y | Y | – | Y | Y |

* Incumbent

UNITED STATES
DEFENSE COMMITTEE

Lieutenant General
Daniel O. Graham
United States Army, Retired

These letters were among several proposed activities that USDC put before the Commission on October 13, 1983, in a request for an advisory opinion pursuant to 2 U.S.C. § 437f(a)(1).[2] In this request, USDC

Note 1—Continued

Dear Friend:

Your help is urgently needed.

Earlier this week I sent you and some other 9500 (State) citizens the preliminary results of USDC's survey of congressional candidates running in (State's) primary.

But because of the critical nature of the defense needs faced by our nation, I want to say a special word about the responses from the candidates in the second congressional district.

You undoubtedly noticed in our earlier report that 6 of the candidates, 4 Democrats and 2 Republicans, answered the survey 100% in favor of a strong national defense and foreign policy.

Unfortunately two of the candidates, incumbent Republican Congressman XXXXXXXX and Democrat XXXXXXXX, have so far refused to answer while Democrat XXXXXXXX has answered only 6 of the 12 questions and answered 2 of those wrong.

That's why it's so important I write you today and why I'm asking you to make one last attempt to contact the unresponsive candidates and convince them they must come out for a strong national defense.

Of course I realize we don't face an easy task.

While Congressman XXXXXXXX has a mixed voting record on defense he has all too often voted with those self styled peaceniks who seem to think the U.S. rather than the Soviets are the real threat to world peace.

For example, in the last two congresses Congressman XXXXXXXX has twice voted for the nuclear freeze and voted to reduce aid to the Pro–American government of El Salvador and yet voted to continue aid to the Cuban-backed communist government of Nicaragua.

But Congressman XXXXXXXX's weak voting record just makes your immediate action that much more important.

Will you please contact the two unresponsive candidates, Congressman XXXXXXXX and Mr. XXXXXXXX, as well as Mr. XXXXXXXX right away and urge them to answer the USDC survey immediately and show they represent you and their other constituents by supporting a strong national defense.

And would you also contact the six candidates who came out 100% for a strong national defense, thank them for their stand, and urge them not to give into [*sic*] the disarmament crowd or the liberal media.

With your help we can force the politicians to pay attention to "the folks back home."

Sincerely,

Henry L. Walther
Executive Vice President

P.S. I'm sure you understand it's a lot easier to convince a politician to come out for a strong national defense when he's looking for votes than to change his mind after he's safely in office. Please act now.

2. 2 U.S.C. § 437f provides:

Advisory opinions

(a) Requests by persons, candidates, or authorized committees; subject matter; time for response

(1) Not later than 60 days after the Commission receives from a person a complete written request concerning the application of this Act, chapter 95 or chapter 96 of title 26, or a rule or regulation prescribed by the Commission, with respect to a specific transaction or activity by the person, the Commission shall render a written advisory opinion relating to such transaction or activity to the person.

(2) If an advisory opinion is requested by a candidate, or any authorized committee of such candidate, during the 60–day period before any election for Federal office involving the requesting party, the Commission shall render a written advisory opinion relating to such request no later than 20 days after the Commission receives a compete written request.

(b) Procedures applicable to initial proposal of rules or regulations, and advisory opinions

Any rule of law which is not stated in this Act or in chapter 95 or chapter 96 of Title 26 may be initially proposed by the Commission only as a rule or regulation pursuant to procedures established in section 438(d) of this title. No opinion of an advisory nature may be issued by the Commission or any of its employees except in accordance with the provisions of this section.

(c) Persons entitled to rely upon opinions; scope of protection for good faith reliance

(1) Any advisory opinion rendered by the Commission under subsection (a) of this section may be relied upon by—

(A) any person involved in the specific transaction or activity with respect to which such advisory opinion is rendered; and

(B) any person involved in any specific

proposed to use funds from its corporate treasury to publish and distribute information about candidates just before primary or general elections. This information included the number of times and the specific ways in which the candidates' responses comported with USDC's views. USDC also proposed to disseminate the voting records of members of Congress on legislation of interest to USDC. The Commission responded in Advisory Opinion ("AO") 1983–43, 1 Fed.Election Camp.Fin.Guide (CCH) ¶ 5746 (Jan. 26, 1984), concluding that USDC's financing of some of the proposed activities would be prohibited by section 441b.

On March 28, 1984, USDC filed this lawsuit to challenge the validity of the advisory opinion on statutory and constitutional grounds. USDC asked the district court to certify constitutional questions to the court of appeals sitting en banc pursuant to the unique provisions of 2 U.S.C. § 437h(a). Meanwhile, the Commission amended its regulations, and USDC obtained a second advisory opinion, AO 1984–14, 1 Fed.Election Camp.Fin.Guide (CCH) ¶ 5761 (May 25, 1984), in which the Commission reiterated its earlier determination. After the second advisory opinion, USDC amended its complaint but retained its request that the district court certify questions to the en banc court pursuant to section 437h(a). The Commission moved to dismiss the complaint, and USDC moved again for certification. The district court never ruled on USDC's and the FEC's motions, but took them under advisement.

On January 22, 1987, USDC requested a third advisory opinion in light of the Supreme Court's decision in *FEC v. Massachusetts Citizens for Life, Inc., supra.* In response, the Commission issued AO 1987–7, 1 Fed.Election Camp.Fin.Guide (CCH) ¶ 5889 (Apr. 6, 1987), which superseded the previous two opinions. This opinion concluded that *Massachusetts Citizens for Life* did not apply to USDC's case because USDC, unlike MCFL, accepts contributions from business corporations. The Commission did not issue an advisory opinion on USDC's proposed publication of incumbents' voting records because it lacked the affirmative vote of four members required under 2 U.S.C. § 437c(c).[3] As for the proposed dissemination of candidate responses to USDC questionnaires, the Commission declined to comment on newspaper advertising since no "specific factual description of this activity was provided." AO 1987–7, at n. 1. However, it determined that the two draft letters, note 1 *supra*, were not exempt under the regulations, 11 C.F.R. § 114.4(b)(5), and therefore violated section 441b in view of their proximity to the election and their advocacy of specific candidates.

After the third advisory opinion, USDC again amended its complaint and challenged only the Commission's conclusion in AO 1987–7 that distribution of the two draft letters could not be financed from USDC's corporate treasury. In this amended complaint, USDC also abandoned its request for certification of constitutional questions to the en banc court pursuant to section 437h. Instead, it requested declaratory and injunctive relief directly from

transaction or activity which is indistinguishable in all its material aspects from the transaction or activity with respect to which such advisory opinion is rendered.

(2) Notwithstanding any other provisions of law, any person who relies upon any provision or finding of an advisory opinion in accordance with the provisions of paragraph (1) and who acts in good faith in accordance with the provisions and findings of such advisory opinion shall not, as a result of any such act, be subject to any sanction provided by this Act or by chapter 95 or chapter 96 of title 26.

(d) Requests made public; submission of written comments by interested public

The Commission shall make public any request made under subsection (a) of this section for an advisory opinion. Before rendering an advisory opinion, the Commission shall accept written comments submitted by any interested party within the 10–day period following the date the request is made public.

3. [T]he affirmative vote of 4 members of the Commission shall be required in order for the Commission to take any action in accordance with paragraph (6), (7), (8), or (9) of section 437d(a) of this title or with chapter 95 or chapter 96 of title 26.

the district court. That court, as we have said, found that it had jurisdiction, but held for the Commission on the merits.

## DISCUSSION

 On appeal the Commission renews its argument that the district court lacked jurisdiction. While we believe that the district court did have jurisdiction, we think that the Commission's arguments concerning jurisdiction do go to ripeness. We will therefore set forth the assertions made. To do so, however, we must first detail the Act's administrative scheme.

FECA, together with the Fund Act and the Matching Payment Act, limit federal election campaign contributions and expenditures, require extensive disclosure and provide for public funding of presidential campaigns. The Commission administers the three acts and formulates policy that concerns them. It has six voting members, no more than three of whom may be affiliated with the same political party, 2 U.S.C. § 437c(a)(1), and, as we have said, the affirmative vote of four members of the Commission is required for any formal agency action, section 437c(c), note 3 *supra*. The Commission has broad duties as administrator. *See, e.g.*, 2 U.S.C. § 438(a), (b). It also has "exclusive jurisdiction with respect to the civil enforcement" of the Act, 2 U.S.C. § 437c(b)(1), and there is an elaborate administrative process for such civil enforcement. Under section 437g and the Commission regulations, 11 C.F.R. Pt. 111, upon receipt of a sworn administrative complaint alleging violations, the Commission is to notify the object of the complaint and that person has fifteen days to demonstrate in writing that no action should be taken. 2 U.S.C. § 437g(a)(1), 11 C.F.R. §§ 111.5, 111.6. If the Commission finds "reason to believe" that a violation has occurred, the respondent is notified under 2 U.S.C. § 437g(a)(2), 11 C.F.R. § 111.9(a), and may submit a legal and factual response to the "reason to believe" finding. The statute then provides for an investigation. 2 U.S.C. § 437g(a)(2). A respondent may initiate discussions towards resolving the matter

through conciliation. 11 C.F.R. § 111.18(d). After the investigation is completed, the General Counsel must forward to the respondent a brief on the issues involved and the respondent may reply. 2 U.S.C. § 437g(a)(3), 11 C.F.R. § 111.16. The Commission then determines whether there is "probable cause to believe" that a violation has occurred. 2 U.S.C. § 437g(a)(4)(A)(i). If so, the Commission must "attempt ... to correct or prevent such violation by informal methods of conference, conciliation, and persuasion, and to enter into a conciliation agreement." *Id.* If conciliation efforts are unavailing, the Commission's only recourse is to bring a civil suit in district court. 2 U.S.C. § 437g(a)(6)(A).

The Commission argues that the district court lacks jurisdiction over this lawsuit because Congress provided for judicial review of issues concerning the Act's application only after they are first channeled through the administrative process described above, which was designed in part to ensure that sufficient efforts are made to resolve issues without litigation. The Commission says that Congress did not intend to permit organizations that wanted to bypass the statute's detailed administrative and judicial review provisions to obtain advance judicial approval of every particular letter that they might want to distribute. In *Bread Political Action Committee v. FEC*, 455 U.S. 577, 102 S.Ct. 1235, 71 L.Ed. 2d 432 (1982), a case involving a statutory question of who may challenge the constitutionality of FECA in specially expedited suits, the Court said that "plaintiff's meeting the usual standing requirements can challenge provisions of [FECA] under the federal-question jurisdiction granted the federal courts by 28 U.S.C. § 1331 (1976 ed., Supp. IV)." 455 U.S. at 585, 102 S.Ct. at 1240. The USDC probably does have standing since it has sought advisory opinions and its complaint did assert jurisdiction under 28 U.S.C. § 1331(a). But we need not determine whether the statement in *Bread* would support jurisdiction to hear this case.

We agree that the thrust of the Commission's argument goes to determining ripeness of the controversy. To decide wheth-

er the controversy is ripe for adjudication we must examine the provisions of FECA relating to advisory opinions. 2 U.S.C. § 437f, note 2 *supra*. There must be a "complete written request" concerning the application of the Act or the Fund Act or the Matching Payment Act or a rule or regulation prescribed by the Commission, "with respect to a specific transaction or activity by the person." 2 U.S.C. § 437f(a)(1). The Commission must then make the request public and accept written comments submitted by any interested party within the ten-day period following the date that the request was made public. 2 U.S.C. § 437f(d). The Commission then issues a written advisory opinion, if there are at least four members who vote to do so, within sixty days of the written request. 2 U.S.C. § 437f(a)(1).[4]

A rule of law may initially be proposed by the Commission only as a rule or regulation pursuant to very elaborate procedures involving submission of the rule or regulation to the Congress. 2 U.S.C. § 438(d).[5] No opinion of an advisory nature interpreting such a rule or regulation may be issued

by the Commission except in accordance with that requirement. 2 U.S.C. § 437f(b).[6] Advisory opinions are binding only in the sense that they may be relied on affirmatively by any person involved in the specific transaction or activity discussed in the opinion or in any materially indistinguishable transaction or activity. Any person who in good faith acts in accordance with an advisory opinion shall not be subject to any sanction, notwithstanding any other provision of law. 2 U.S.C. § 437f(c). On the other hand, to the extent that the advisory opinion does not affirmatively approve a proposed transaction or activity, it is binding on no one—not the Commission, the requesting party, or third parties.

Nothing in the legislative history of section 437f indicates that Congress thought advisory opinions would be reviewable. *See* S.Conf.Rep. No. 1237, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 5587, 5618, 5667–68; S.Rep. No. 677, 94th Cong., 2d Sess. 6–7, *reprinted in* 1976 U.S.Code Cong. & Admin.News 929, 934–35; H.R.Rep. No. 422, 96th Cong., 1st Sess. 20, *reprinted in* 1979 U.S.Code

---

**4.** If an advisory opinion is requested by a candidate or his authorized committee less than 60 days before an election, the written advisory opinion must be rendered no later than 20 days after receipt of the complete written request. Section 437f(a)(2), note 2 *supra*.

**5.** 2 U.S.C. § 438(d) provides:
 (1) Before prescribing any rule, regulation, or form under this section or any other provision of this Act, the Commission shall transmit a statement with respect to such rule, regulation, or form to the Senate and the House of Representatives, in accordance with this subsection. Such statement shall set forth the proposed rule, regulation, or form, and shall contain a detailed explanation and justification of it.
 (2) If either House of the Congress does not disapprove by resolution any proposed rule or regulation submitted by the Commission under this section within 30 legislative days after the date of the receipt of such proposed rule or regulation or within 10 legislative days after the date of receipt of such proposed form, the Commission may prescribe such rule, regulation, or form.
 . . . .
 (4) For purposes of this subsection, the terms "rule" and "regulation" mean a provision or series of interrelated provisions stating a single, separable rule of law.

(5)(A) A motion to discharge a committee of the Senate from the consideration of a resolution relating to any such rule, regulation, or form or a motion to proceed to the consideration of such a resolution, is highly privileged and shall be decided without debate.
 (B) Whenever a committee of the House of Representatives reports any resolution relating to any such form, rule or regulation, it is at any time thereafter in order (even though a previous motion to the same effect has been disagreed to) to move to proceed to the consideration of the resolution. The motion is highly privileged and is not debatable. An amendment to the motion is not in order, and is not in order to move to reconsider the vote by which the motion is agreed to or disagreed with.

**6.** 2 U.S.C. § 437f(b) provides:
 Any rule of law which is not stated in this Act or in chapter 95 or chapter 96 of title 26 may be initially proposed by the Commission only as a rule or regulation pursuant to procedures established in section 438(d) of this title. No opinion of an advisory nature may be issued by the Commission or any of its employees except in accordance with the provisions of this section.

Cong. & Admin.News 2860, 2880. To be sure, if the Commission fails to publish notice of a request for an advisory opinion, thereby denying other parties the opportunity to comment, then interested parties challenging the advisory opinion on the grounds that they were not furnished with notice would present a justiciable, ripe issue. *National Conservative Political Action Comm. v. FEC*, 626 F.2d 953, 958 (D.C.Cir.1980). But an advisory opinion itself is not so final or binding that it is reviewable. In *ITT v. International Brotherhood of Electrical Workers*, 419 U.S. 428, 443–44, 95 S.Ct. 600, 609–10, 42 L.Ed.2d 558 (1975), the Court held that determinations under section 10(k) of the National Labor Relations Act were final dispositions only in a "tautological sense," and so were not reviewable. Similarly, an FEC advisory opinion is final only in a "tautological sense." Indeed, if a person proceeded to act contrary to an FEC advisory opinion, she would be entitled to all of the enforcement protections, including conciliation, conference, persuasion and the like, provided under 2 U.S.C. § 437g. How may we call an advisory opinion "final" if the FEC might later be convinced to change its mind and agree to a compromise?

As *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967), holds, the ripeness doctrine is designed

> to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties. The problem is best seen in a two-fold aspect, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.

*See also Seafarers Int'l Union v. United States Coast Guard*, 736 F.2d 19, 25–29 (2d Cir.1984); *American Fed'n of Gov't Employees v. O'Connor*, 747 F.2d 748 (D.C. Cir.1984) (advisory opinion issued by special counsel as to the Hatch Act's application to voting registration drives conducted by members of public sector unions not ripe for judicial review), *cert. denied sub nom. National Treasury Employees Union v. O'Connor*, 474 U.S. 909, 106 S.Ct. 279, 88 L.Ed.2d 243 (1985); *Clark v. Valeo*, 559 F.2d 642 (D.C.Cir.), *aff'd sub nom. Clark v. Kimmitt*, 431 U.S. 950, 97 S.Ct. 2667, 53 L.Ed.2d 267 (1977); *cf. Allied Corp. v. U.S. Int'l Trade Comm'n*, 850 F.2d 1573, 1578–79 (Fed.Cir.1988) (Federal Circuit has no jurisdiction to review advisory opinion of United States International Trade Commission relating to unfair practices in import trade because such opinions are not "final determinations" under 28 U.S.C. § 1295(a)(6) (1982) and section 337 of the Tariff Act of 1930 (19 U.S.C. § 1337)).

Moreover, we note that the advisory opinion at issue here is particularly inappropriate for judicial resolution at this time. As a consequence of the Supreme Court's decision in *FEC v. Massachusetts Citizens for Life*, the Commission is engaged in a rulemaking proceeding which could alter the very regulations applied in that opinion. *See* 53 Fed.Reg. 416–18 (Jan. 7, 1988) (advance notice of proposed rulemaking).[7] *Cf. Seafarers International Union*, 736 F.2d at 29.

Appellants' reply brief quotes *Martin Tractor Co. v. FEC*, 627 F.2d 375, 388 (D.C.Cir.), *cert. denied sub nom. National Chamber Alliance for Politics v. FEC*, 449 U.S. 954, 101 S.Ct. 360, 66 L.Ed.2d 218 (1980), which said that the "advisory opinion mechanism is also a relatively riskless controversy-ripening tool." They also cite *Anderson v. FEC*, 634 F.2d 3, 5 (1st Cir. 1980) (advisory opinion process "would likely have" produced more facts for a better evaluation of constitutional claims). While we may agree with these pronouncements in spirit, they do not persuade us that an advisory opinion by the FEC is automatical-

---

7. *See also* 53 Fed.Reg. 40070–02 (Oct. 13, 1988) (announcement of public hearing and extension of comment period).

ly ripe for review. This is especially true where we are dealing with a constitutional concept of "express advocacy" that is itself not completely unsusceptible to interpretation. How hard, for example, does one have to hit another over the head to render him "insensible"?

Judgment of the district court vacated and remanded for dismissal for lack of ripeness.