**Sandra FAUCHER and Maine Right to Life Committee, Inc., Plaintiffs,**

v.

**FEDERAL ELECTION COMMISSION and Richard Thornburgh, in his capacity as Attorney General of the United States, Defendants.**

**Civ. No. 85–0244–B.**

United States District Court, D. Maine.

Feb. 24, 1989.

James Bopp, Jr., Eric M. Abel, Brames, Bopp, Haynes & Abel, Terre Haute, Ind., Bryan Dench, Skelton, Taintor, Abbott & Orestis, Lewiston, Me., for plaintiffs.

James McCarthy, Asst. U.S. Atty., Bangor, Me., Sandra M. Schraibman, Karen Stewart, Dept. of Justice, Civ. Div., Lisa E. Klein, Charles N. Steele, Ivan Rivera, Office of the General Counsel, Federal Election Com'n, Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER OF DISMISSAL

CYR, Chief Judge.

### Procedural History

Sandra Faucher and the Maine Right to Life Committee, Inc. [MRLC] demand declaratory and injunctive relief against the Federal Election Commission [FEC] and the Attorney General of the United States. Plaintiffs challenge an FEC regulation governing corporate dissemination of voter guides, *see* 11 C.F.R. § 114.4(b)(5) (1988), on the grounds that the regulation is unconstitutionally vague, violates the Equal Protection Clause of the Fifth Amendment to the United States Constitution and exceeds the statutory authority vested in the FEC under section 441b,[1] 2 U.S.C. § 441b (1982), of the Federal Election Campaign Act [the Act].

These proceedings were stayed pending determination of the constitutionality of section 441b in *Federal Election Commission v. Massachusetts Citizens For Life, Inc.*, 479 U.S. 238, 107 S.Ct. 616, 93 L.Ed.2d 539 (1986). Defendants move to dismiss on the ground that the present action implicates no justiciable case or controversy, inasmuch as all claims are unripe for Article III adjudication.

The United States Magistrate recommends dismissal. Plaintiffs object to the recommended disposition.

---

1. All statutory citations are to sections of the

### Facts

MRLC, a nonprofit organization incorporated under the laws of the State of Maine, is exempted from federal income taxation by title 26 United States Code, section 501(c)(3)–(4). Plaintiff Faucher is a member of the Board of Directors of MRLC and is an adult citizen eligible to vote in elections for the Office of President of the United States. MRLC is not associated with any political candidate, campaign committee or political party. Rather, MRLC is an ideological organization whose purpose is to "educate the public on issues relating to abortion … and [to promote] the sanctity of all innocent life." Complaint, at ¶ 7. MRLC has established the Maine Right to Life Political Action Committee, a separate and distinct segregated fund which makes contributions to candidates for federal and state elective office. Complaint, at ¶ 9.

Using funds from its general treasury, MRLC publishes a bi-monthly newsletter, which is distributed to members and is available to the general public. The May/June (1984) and September/October (1984) editions of the newsletter included "voter guides" containing candidate responses to MRLC questionnaires. MRLC intends to publish voter guides substantially similar to those published in 1984, but fears that the planned voter guides may not meet FEC standards for voter guides distributed by a corporation. *See* 11 C.F.R. 114.4(b)(5). MRLC asserts that the wording of certain questions could be viewed as advocating positions on particular issues and that the voter guide may contain editorial opinion on abortion issues. Neither plaintiff has requested an FEC advisory opinion.

### Statutory Framework

The Act governs the funding of campaigns for federal elective office, including the "contribution" and "expenditure" of corporate funds in connection with a federal election. Under the Act it is

> *unlawful* for any national bank, or any corporation organized by authority of

United States Code.

any law of Congress, to make a contribution or expenditure in connection with any election to any political office, or in connection with any primary election or political convention or caucus held to select candidates for any political office, or *for any corporation* whatever, or any labor organization, *to make a contribution or expenditure in connection with any election at which presidential and vice presidential electors or a Senator or Representative in,* or a Delegate or Resident Commissioner to, *Congress are to be voted for, or in connection with any primary election or political convention or caucus held to select candidates for any of the foregoing offices,* or for any candidate, political committee, or other person knowingly to accept or receive any contribution prohibited by this section, or any officer or any director of any corporation or any national bank or any officer of any labor organization to consent to any contribution or expenditure by the corporation, national bank, or labor organization, as the case may be, prohibited by this section.

2 U.S.C. § 441b(a) (emphasis added).

The term "contribution" includes "any gift, subscription, loan, advance or deposit of money or anything of value made by any person for the purpose of influencing any election for federal office...." 2 U.S.C. § 431(8)(A)(i). The term "expenditure" includes "any purchase, payment, distribution, loan, advance, deposit, or gift of money or anything of value, made by any person for the purpose of influencing any election for Federal office; ..." 2 U.S.C. § 431(9)(A)(i). *However,* "news stor[ies], commentar[ies] or editorial[s] distributed through the facilities of any broadcasting station, newspaper, magazine, or other periodical publication" are not expenditures regulated by the Act, unless "the facilities are owned or controlled by any political party, political committee or candidate." 2 U.S.C. § 431(9)(B)(i).

Under certain circumstances corporations are permitted to distribute material relating to federal elections. *See generally* 11 C.F.R. § 114.4. A corporation may prepare and distribute *nonpartisan* voter guides containing candidate responses to questions concerning their positions on particular issues. 11 C.F.R. § 114.4(b)(5). A voter guide is considered *nonpartisan* if:

(A) The questions are directed to all of the candidates for a particular seat or office, giving the candidates equal time to respond, except that in the case of Presidential and Vice Presidential candidates the questions may be directed only to those candidates seeking the nomination of a major party or to those appearing on the general election ballot in enough States to win a majority of the electoral votes;

(B) The voter guide reprints verbatim the responses of each candidate to whom questions were sent, without any additional comment, editing, or emphasis, although the sponsoring organization may impose limitations on the number of words per response when the questions are initially sent to the candidates for their comments;

(C) The wording of the questions presented does not suggest or favor any position on the issues covered;

(D) The voter guide expresses no editorial opinion concerning the issues presented nor does it indicate any support for or opposition to any candidate or political party;

(E) The sponsor may ask each candidate to provide biographical information such as education, employment positions, offices held, and community involvement and may impose a limitation on the number of words per submission;

(F) The voter guide is made available to the general public in the geographic area in which the sponsoring organization normally operates.

11 C.F.R. § 114.4(b)(5)(i)(A)–(F).

Nonprofit corporations exempt from taxation under title 26 United States Code, section 501(c)(3), (4), and which do not "support, endorse or approve candidates or political parties," need not comply with the criteria for nonpartisan voter guides so long as the voter guide does not favor a candidate or political party. 11 C.F.R.

§ 114.4(b)(5)(ii). Once a tax-exempt corporation establishes a separate political action committee, the FEC "concludes" that the corporation "supports, endorses, or opposes candidates or political parties," and any voter guide distributed by the corporation must comply with the criteria for nonpartisan voter guides. FEC Advisory Opinion 1984–17, at 5 (June 29, 1984).

The FEC was established under the 1974 Amendments to the Act. It has "extensive rulemaking and adjudicative powers." *Buckley v. Valeo,* 424 U.S. 1, 110, 96 S.Ct. 612, 678, 46 L.Ed.2d 659 (1976) (*per curium*). Under section 437d(a)(8), it is empowered to make such rules "as are necessary to carry out the provisions of the Act." *Id.* The FEC is authorized also to "formulate general policy with respect to the administration of the Act." 2 U.S.C. § 437c(b).

In addition to general policymaking, the FEC is empowered to issue advisory opinions concerning specific applications of the Act and its regulations. 2 U.S.C. § 437(d). Advisory opinions *"shall"* be rendered "not later than 60 days" after a written request. 2 U.S.C. § 437f(a) (emphasis added). Advisory Opinions may be relied upon by '

(A) any person involved in the specific transaction or activity with respect to which such advisory opinion is rendered; and

(B) any person involved in any specific transaction or activity which is indistinguishable in all its material aspects from the transaction or activity with respect to which such advisory opinion is rendered.

(2) Notwithstanding any other provisions of law, any person who relies upon any provision or finding of an advisory opinion in accordance with the provisions of paragraph (1) and who acts in good faith in accordance with the provisions and findings of such advisory opinion shall not, as a result of any such act, be subject to any sanction provided by this Act or by chapter 95 or chapter 96 of Title 26.

2 U.S.C. § 437f(c)(1)–(2).

The Act contains "complex [administrative and] judicial review provisions." *California Medical Association v. Federal Election Commission,* 453 U.S. 182, 187, 101 S.Ct. 2712, 2717, 69 L.Ed.2d 567 (1981); *see* 2 U.S.C. § 437g–438. The Act invests the FEC with "exclusive jurisdiction" for civil enforcement of the Act, 2 U.S.C. § 437c(b)(1), and prescribes an "elaborate administrative process," *United States Defense Committee v. Federal Election Commission,* 861 F.2d 765, 777 (2d Cir. 1988). The Act confers special standing in actions for expedited judicial review of constitutional challenges.

The Commission, the national committee of any political party, or any individual eligible to vote in any election for the office of President may institute such actions in the appropriate district court of the United States, including actions for declaratory judgment, as may be appropriate to construe the constitutionality of any provision of this Act. The district court immediately shall certify all questions of constitutionality of this Act to the United States court of appeals for the circuit involved, which shall hear the matter sitting en banc.

2 U.S.C. § 437h(a).

## Discussion

Plaintiffs assert seven challenges to the validity of the FEC regulation (11 C.F.R. § 114.4(b)(5)) on corporate dissemination of voter guides.[2] Plaintiffs request a judicial

---

**2.** *First,* plaintiffs argue that the regulation facially abridges their first amendment right of free speech. *Second,* plaintiffs maintain that Congress did not intend the term "expenditure" to encompass use of funds from MRLC's general treasury for preparation of voter guides; therefore, 11 C.F.R. § 114.4(b)(5) exceeds the FEC's statutory authority. *Third,* because the regulation prohibits MRLC from making expenditures for the purpose of issue advocacy, plaintiffs maintain that section 441b of the Act, as applied by the FEC, violates the first amendment. *Fourth,* plaintiffs argue that section 441b and the regulation at 11 C.F.R. § 114.4(b)(5) provide no ascertainable standards for determining what constitutes "a contribution or expenditure in connection with any [federal] election ...," *see* Act § 441b(a); hence, § 441b and its companion regulation are unconstitutionally vague on their face. *Fifth,* plaintiffs contend that monies used to defray the cost of voter guides are not expenditures prohibited by the Act because

declaration invalidating the FEC regulation governing voter guides, 11 C.F.R. § 114.4(b)(5), and an injunction preventing the defendants from enforcing the regulation and from initiating criminal or civil proceedings against plaintiffs and others acting in concert with them for activities governed by the regulation. The defendants maintain that the present action implicates no justiciable claim because the plaintiffs have not sought an FEC advisory opinion applying the Act and regulations to MRLC's planned voter guides.

## Justiciability

The judicial power of a federal court established under Article III of the United States Constitution may not be invoked except in an actual "case or controversy." *Los Angeles v. Lyons*, 461 U.S. 95, 101, 103 S.Ct. 1660, 1664, 75 L.Ed.2d 675 (1983) (citations omitted); *Flast v. Cohen*, 392 U.S. 83, 94–101, 88 S.Ct. 1942, 1949–53, 20 L.Ed. 2d 947 (1968). Although not "discernible by any precise test ..., [the] basic inquiry is whether the 'conflicting contentions of the parties ... present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract.'" *Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979) (quoting *Railway Mail Association v. Corsi*, 326 U.S. 88, 93, 65 S.Ct. 1483, 1487, 89 L.Ed. 2072 (1945)).

Several judicial doctrines "have grown up to elaborate [the case or controversy] requirement," including standing and ripeness. *Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). These doctrines are "founded in concern about the proper—and properly limited—role of the courts in a democratic society." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct.

2197, 2204, 45 L.Ed.2d 343 (1975); *see also Allen*, 468 U.S. at 750, 104 S.Ct. at 3324.

The United States Magistrate recommends that the complaint be dismissed for failure to state a case or controversy ripe for judicial review:

(i) the issue of the plaintiffs' standing to maintain this action is not yet ripe for determination by this court because the plaintiffs have failed to exhaust the administrative remedy available to them to determine the applicability of § 441b to their activities, and (ii) there would not appear to be any undue hardship to the parties if the court at this time withheld consideration of the issues raised by the complaint.

Recommended Disposition, at 16.

As the Magistrate recognized, at times the "problems of standing and ripeness are merged." 4 K. Davis, *Administrative Law* § 25:1, at 350 (2d ed. 1983); *see also, Pacific Legal Foundation v. State Energy Resources Conservation and Development Commission*, 659 F.2d 903, 915 (9th Cir.1981) (Ripeness supplements the standing doctrine by inquiring "whether the harm asserted has matured sufficiently to warrant judicial intervention."), *aff'd sub nom. Pacific Gas & Electric Co. v. State Energy Resources Conservation and Development Commission*, 461 U.S. 190, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983)

In the present action plaintiffs challenge the constitutionality of the regulations governing corporate dissemination of voter guides, 11 C.F.R. § 114.4(b)(5), as promulgated under section 441b of the Act. Since the plaintiffs have not requested an FEC advisory opinion as to whether the MRLC's planned newsletter activities are governed by section 441b, their claims are not ripe

---

the MRLC voter guides come within the exemption of title 2 United States Code, § 431(9)(B)(i), for any "news story, commentary, or editorial distributed through the facilities of any ... newspaper ... or other periodical publication." 2 U.S.C. § 431(9)(B)(i). *Sixth*, plaintiffs argue that the Act denies them equal protection of the law, by arbitrarily and unreasonably discriminating between corporations engaged in broadcasting, or in the publication of newspapers and

magazines, and nonmedia corporations such as MRLC, in violation of the first and fifth amendments. *Seventh*, plaintiffs contend that the regulations, as interpreted by the FEC in advisory opinion 1984–17, arbitrarily and unreasonably discriminate between nonprofit corporations with political action committees and nonprofit corporations without such committees, in violation of the equal protection clause of the fifth amendment.

for adjudication.[3]

Ripeness is "peculiarly a question of timing." *Buckley v. Valeo*, 424 U.S. at 114, 96 S.Ct. at 680. The ripeness problem is "twofold ...[,] requiring [the court] to evaluate the fitness of the issues for judicial resolution and the hardship to the parties of withholding court consideration." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). The "basic rationale" of the ripeness doctrine

> is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.

*Id.* at 148–49, 87 S.Ct. at 1515. Whether an issue is ripe for adjudication turns upon a bipartite analysis. *Abbott Laboratories*, 387 U.S. at 149, 87 S.Ct. at 1515.

"Under the 'fitness of the issues' [test, the] court takes account of the institutional capacities of, and the relationship between, courts and agencies." *Eagle–Picher Industries, Inc. v. United States Environmental Protection Agency*, 759 F.2d 905, 915 (D.C.Cir.1985). The court considers whether it "will benefit from deferring review until the agency's policies have crystallized and the 'question arises in some more concrete and final form.'" *Eagle–Picher Industries*, 759 F.2d at 915 (quoting *Continental Air Lines, Inc. v. Civil Aeronautics Board*, 522 F.2d 107, 124–25 (D.C. Cir.1974). *Accord State Farm Mutual Auto Insurance Co. v. Dole*, 802 F.2d 474, 479 (1986), ("[E]ven when ... the issues

presented are purely legal, a court may nonetheless properly deem a matter unfit for resolution if postponing review would provide for a more efficient examination and disposition of the issues."), *cert. denied*, 480 U.S. 951, 107 S.Ct. 1616, 94 L.Ed. 2d 800 (1987). *See also First Commodity Corp. of Boston v. Commodity Futures Trading Commission*, 676 F.2d 1, 6 (1st Cir.1982).

Awaiting an initial agency determination is particularly appropriate in the circumstances of the present case. The "limited review function of the [federal] courts is not rationally exercised by attempting to predict how the FEC would resolve this matter." *National Republican Congressional Committee v. Legi–Tech Corp.*, 795 F.2d 190, 193 (D.C.Cir.1986). If the FEC should issue an advisory opinion that MRLC is exempt from regulation under section 441b, plaintiffs would have no standing to challenge section 441b or any companion regulation. And if the FEC opines that MRLC is subject to section 441b, the advisory opinion process should produce a better foundation for judicial evaluation of the constitutional claims. *See Anderson v. Federal Election Commission*, 634 F.2d 3, 5 (1st Cir.1980).

An FEC interpretation of the Act is entitled to substantial deference. *See Federal Election Commission v. Democratic Senatorial Campaign Committee*, 454 U.S. 27, 37, 102 S.Ct. 38, 44, 70 L.Ed.2d 23 (1981). By vesting the FEC with primary jurisdiction over civil enforcement of the Act, 2 U.S.C. § 437c(b)(1), Congress has demonstrated its intention to "centralize the civil enforcement of the Act in [an agency] ... 'equipped with ... specialized knowledge and cumulative experience.'"[4]

---

**3.** As plaintiffs recognize, under *Massachusetts Citizens For Life*, 479 U.S. 238, 107 S.Ct. 616, MRLC may be exempt from the restrictions of section 441b. In *Massachusetts Citizens For Life*, the Supreme Court held that a publication must expressly advocate the election of particular candidates "to be subject to the prohibition of § 441b." 479 U.S. at 249, 107 S.Ct. at 623. The Court also held that nonprofit voluntary organizations meeting certain requirements may not be regulated under section 441b. 479 U.S. at 263–64, 107 S.Ct. at 630–31. MRLC further argues that its publications fall into the

"newspaper exception" to the definition of "expenditure," 2 U.S.C. § 431(9)(B)(i), and therefore are not regulated by section 441b.

**4.** Where the constitutionality of the Act is called into question, Congress permits expedited judicial review at the instance of certain types of litigants, including "any individual eligible to vote in any election for the office of President." 2 U.S.C. § 437h(a). Although plaintiff Faucher is such an individual, plaintiffs have "never requested the expedited consideration of their suit" permitted under section 437h. Plaintiffs'

H.R.Rep. No. 917, 94th Cong., 2d Sess. 4 (1976), quoting *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 242, 79 S.Ct. 773, 778, 3 L.Ed.2d 775 (1959). Whether MRLC is exempt from regulation under section 441b because its voter guides and newsletters fit into the "newspaper exception," 2 U.S.C. § 431(9)(B)(i), is an issue particularly well suited to FEC consideration in the first instance. *See generally, Legi–Tech Corp.*, 795 F.2d at 193; *French v. Devine*, 547 F.Supp. 443, 446 (D.D.C.1982).

The second prong of the ripeness test requires consideration of any hardship to the parties from postponing judicial review. *See Abbott Laboratories*, 387 U.S. at 149, 87 S.Ct. at 1515. When considering the ripeness of a particular claim the court is concerned with maintaining the "proper balance between the need for conserving judicial resources and the need for relieving private parties of debilitating uncertainness." 4 K. Davis, *Administrative Law* § 25:16, at 410. The need for judicial resolution is particularly great where the "complaining party must immediately choose between onerous compliance with a government requirement and possible losses from noncompliance." *Id.* at 411.

The potential harm faced by these plaintiffs is the chilling of their exercise of first amendment rights. Plaintiffs claim that they face the dilemma of *either* not publishing the voter guides as contemplated in advance of primary and general elections involving candidates for federal office *or* publishing the voter guides and risking sanctions for failure to comply with FEC regulations.

The next regularly scheduled State of Maine election of a candidate for federal office is to be held in 1990. The FEC is required by statute to issue an advisory opinion within 60 days after receiving a complete written application. 2 U.S.C. § 437f. Therefore, the hardship resulting to plaintiff from delay, if any can be found to exist, is far outweighed by the interest in conserving limited judicial resources and, more importantly, by the interest in with-

Response to Defendants' Motions to Dismiss, at 18.

holding judgment until FEC policies have crystallized. *See Martin Tractor Co. v. Federal Election Commission*, 627 F.2d 375, 378 (D.C.Cir.), *cert. denied*, 449 U.S. 954, 101 S.Ct. 360, 66 L.Ed.2d 218 (1980) (no hardship to parties from deferring judgment pending FEC advisory opinion); *Mott v. Federal Election Commission*, 494 F.Supp. 131, 135 (D.D.C.1980) (issue unripe until issuance of FEC advisory opinion). *French v. Devine*, 547 F.Supp. at 446–47.

Accordingly, it is ORDERED that

1. Plaintiffs' Motion For Summary Judgment is DENIED.

2. Defendants' Motions To Dismiss are GRANTED.

SO ORDERED.